**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **DYMATIZE ENTERPRISES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:09-CV-1840-O-BH** |
| | § | |
| **MAXIMUM HUMAN PERFORMANCE,** | § | |
| **INC., et al.** | § | |
| | § | |
| **Defendant.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to Special Order No. 3-251, this case was referred for pretrial management, including the determination of non-dispositive motions and the issuance of findings, conclusions, and recommendation on dispositive motions. Before the Court is *Defendants' Motion to Transfer the Action or Alternatively to Dismiss as to Defendant Gerard Dente for Lack of Personal Jurisdiction* ("Mot."), filed October 29, 2009. (doc.10). Based on the relevant filings, evidence, and applicable law, Defendants' motion to transfer the action should be **DENIED,** and the alternate motion to dismiss should be **GRANTED**.

## I. BACKGROUND

Plaintiff Dymatize Enterprises, Inc. ("Dymatize"), is a Texas corporation with its principal place of business in Texas. Defendant Maximum Human Performance ("MHP") is a New Jersey corporation with its principal place of business in New Jersey. Its president, Gerard Dente ("Dente"), is also a New Jersey resident. Defendant Supplement Services, LLC d/b/a MuscleMeds ("MuscleMeds"), is a New Jersey limited liability company, with its principal place of business in New Jersey. Dymatize, MHP, and Musclemeds are all in the business of marketing and distributing

food and sports nutritional supplements.

Dymatize alleges that MHP's products compete directly with its products, and that MHP's advertising materials contain false, misleading, and deceptive statements about its own products as well as those of its competitors.  Dymatize claims that MHP and its president Dente are liable for unfair competition and false advertising under the common law and the Lanham Act, 15 U.S.C. § 1051 *et seq*.  Dymatize also alleges that MuscleMeds sells products virtually identical to Dymatize products and that it sells MethylBURN Extreme, which is confusingly similar in name to Dymatize's registered trademark DYMA-BURN®.  Dymatize claims that MuscleMeds is liable for trademark infringement under the common law and the Lanham Act, unfair competition under the common law, and dilution of trademark rights under§ 16.29 of the Texas Business and Commerce Code.

On October 29, 2009, Defendants filed a motion to transfer venue from the Northern District of Texas to the District of New Jersey, and an alternate motion to dismiss defendant Dente for lack of personal jurisdiction.  The parties timely filed a response ("Resp.") and reply ("Reply"), and the motions are now ripe for consideration.

## II.  MOTION TO TRANSFER

Pursuant to 28 U.S.C. § 1404(a), Defendants move to transfer this lawsuit to the District of New Jersey.  (Mot. at 1).

A district court may transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice ... to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  As a threshold matter, the language of § 1404(a) requires the court to determine whether the proposed transferee district is one in which the suit might have been brought.  *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003).  Once this threshold has been met, the court

must then consider a number of private and public interest factors to determine whether or not, on balance, the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (hereinafter *In re Volkswagen II*). The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) [hereinafter *In re Volkswagen I*] (citing *Piper Aircraft Co. v. Hartzell Propeller, Inc.*, 454 U.S. 235, 241 n.6). The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* A court may not transfer a case where the result is merely to shift inconvenience of the venue from one party to the other. *Fowler v. Broussard*, 2001 WL 184237, at *2 (N.D. Tex. Jan. 22, 2001) (Fitzwater, J.). "The moving parties bear the burden of proving by a preponderance of the evidence that transfer is appropriate." *Bank One*, *N.A. v. Euro-Alamo Invs., Inc.*, 211 F.Supp.2d 808, 812 (N.D. Tex. 2002) (Fitzwater, J.).

## A.      Proposed Transferee District

As a threshold matter, the Court must determine whether the proposed transferee district is one in which the suit might have been brought. *In re Horseshoe Entm't*, 337 F.3d at 433. Since this action is founded on federal question jurisdiction, venue is proper only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions

giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

Here, it is undisputed that this suit might have been brought in the District of New Jersey. First, all of the defendants in this action reside in the District of new Jersey;  Defendant Dente resides in New Jersey, MHP is a New Jersey corporation with its principal place of business in New Jersey, and Musclemeds is a New Jersey limited liability company with its principal place of business in New Jersey. *See* 28 U.S.C. § 1391(c) (a corporate defendant resides in any district where it is subject to personal jurisdiction).  Second, a substantial part of the events giving rise to Dymatize's claims of unfair competition, false advertisement, and trademark infringement allegedly occurred in the New Jersey offices of MuscleMeds and MHP.

**B.**      **Private Interest Factors**

Since the suit might have been brought in the District of  New Jersey, the Court next considers the private interest factors set out in *Volkswagen* to determine whether they favor transfer to that district.

### *1. Relative Ease of Access to Sources of Proof*

As for the relative ease of access to sources of proof in determining whether to transfer, Defendants contend that all documents relating to the design, selection, research and implementation of the trademark MethylBURN®, and the allegedly false advertising statements are located in New Jersey.  (Mot. at 6).  Dymatize responds that Defendants have not specified the existence, number, and volume of documents.  (Resp. at 9).

By not specifying the number and volume of documents, Defendants have failed to show that

the amount of documents and their location would impose a hardship upon the parties. Given this failure, the first factor is neutral. *See NDC Invest. LLC v. Lehman Bros., Inc.*, 2006 WL 2051030, at *4 (N.D. Tex. July 21, 2006) (Fitzwater J.) (holding the factor neutral because movants did not demonstrate the number and volume of documents and records).

### 2. Availability of Compulsory Process

The second factor is the availability of compulsory process to compel the presence of unwilling witnesses. Defendants assert that the Northern District of Texas lacks absolute subpoena power over non-party witnesses such as independent consultants located in New Jersey, since these witnesses are outside the Northern District's subpoena power for depositions under Fed. R. Civ. P. 45(c)(3)(A)(ii), and since any trial subpoenas for these witnesses to travel more than a 100 miles would be subject to motions to quash under Fed. R. Civ. P. 45(c)(3)(A)(ii). (Mot. at 6-7). Dymatize responds that Defendants have failed to specify key witnesses to be called, make a general statement of what their testimony will cover, and identify any unwilling witnesses whose testimony would need to be compelled. (Resp. at 9).

Since defendants do not identify any unwilling witnesses whose testimony may need to be compelled, this factor is neutral. *See Pinnacle Label, Inc. v. Spinnaker Coating, LLC*, 2009 WL 3805798, at *10 (N.D. Tex. Nov. 12, 2009) (Fitzwater C.J.) (concluding this factor is neutral where no unwilling witnesses are identified); *Ternium Int'l U.S.A. Corp. v. Consol. Sys., Inc.*, 2009 WL 464953, at *3 (N.D. Tex. Mar. 25, 2009) (Fish, J.) (same).

Defendants counter that they are not required to identify key witnesses under *In re Volkswagen II* and *Odom v. Microsoft Corp.*, 596 F.Supp.2d 995, 1001-02 (E.D. Tex. 2009). (Reply at 6-7). These cases state that movants are not required to provide affidavits identifying each

proposed witness and outlining their testimony.  They don not stand for the proposition that movants

need not identify key witnesses at all.

### 3.  *Cost of Attendance for Willing Witnesses*

The third factor is the cost of attendance for willing witnesses.  Defendants state that since

all the events giving rise to Dymatize's claims occurred in New Jersey, almost all of its key

witnesses, such as quality assurance, distribution, purchasing, packaging, research and development,

and marketing personnel, would be from New Jersey.  Defendants suggest that because of the 1500-

mile distance between New Jersey and Texas, it would be less costly to hold trial in New Jersey.

(Mot. at 7).  Dymatize counters that Defendants do not specify the key witnesses to be called or

make a general statement of what their testimony will cover.  (Resp. at 7).

Even though Defendants have established at a general level that its witnesses will likely be

from New Jersey, again they have not identified any key witnesses.  As a result, the cost of

attendance factor is neutral.  *See Kimberly-Clark Worldwide, Inc. v. First Quality*, 2009 WL

2634860, at *6 (N.D. Tex 2009) (Fitzwater J.) (concluding that the factor is neutral where parties

seeking transfer establish at a general level that witnesses will likely be derived from the transferee

district but fail to identify any key witnesses).

### 4.  *Practical Problems that Make the Trial of a Case Easy, Expeditious, and Inexpensive*

In addition, the Court must also consider other practical problems that would make the trial

of a case easy, expeditious, and inexpensive.  Defendants argue that the Northern District of Texas

lacks personal jurisdiction over defendant Dente while the District of New Jersey has jurisdiction

over all defendants, thus making New Jersey suitable for a more expeditious and inexpensive

resolution of the dispute at hand.  Defendants' argument is moot because defendant Dente is no

longer a party to this action as the instant decision dismisses him for lack of personal jurisdiction. *See Suhor Indus., Inc., v. Fed Ins. Co.*, 2009 WL 212055, at *5 (D. Kan. Jan. 23, 2009). This factor is neutral.

## C.   **Public Interest Factors**

The Court also considers the public interest factors to see if they favor transfer.

### *1. Administrative Difficulties flowing from Court Congestion*

In deciding a motion to transfer, a court  must evaluate "the administrative difficulties flowing from court congestion." *In re Volkswagen II*, 545 F.3d at 315.  Defendants do not argue that this factor favors transfer.  Dymatize, on the other hand, cites statistics from the United States Courts' website to show that this case could proceed to trial more quickly in the Northern District of Texas than in the District of New Jersey.  (Resp. at 10).

Even though Dymatize states that the median time to trial in the Northern district is 24.0 months for a jury trial as compared to 39.5 months in the district of New Jersey, it does not point to median times for trademark cases.  This factor is at most neutral.  *See Odom v. Microsoft Corp.*, 596 F.Supp.2d 995, 1003 (E.D. Tex. 2009) (this factor is neutral where non-movant points to median times to trial generally but does not point to median times for patent cases).

### *2. Local Interest in Having Localized Interests Decided At Home*

The second factor is the local interest in having localized interests decided at home. Defendants argue that New Jersey has a strong interest in deciding this case since all the business activities that gave rise to Dymatize's claims occurred in the New Jersey offices of MHP and MuscleMeds.  (Mot. at 8).  Dymatize, on the other hand, asserts that since this action involves trademark infringement, Texas has an interest in protecting its resident's trademarks.  (Resp. at 11).

There is no doubt that residents of the Northern District of Texas have an interest in this dispute because a Texas resident's trademark has allegedly been infringed and the trademark infringing product, along with other products, was allegedly sold and continues to be sold within the district in direct and unfair competition with the products of its resident. *See Your Town Yellow Pages, L.L.C. V. Liberty Press*, 2009 WL 364509, at *14 (N.D. Tex., Nov. 2, 2009) (Fitzwater J.). The District of New Jersey has an interest in the dispute, but only because the outcome may have a direct financial impact on the parties. *See id.* Since the public at large is only affected in the Northern District of Texas, it has a direct interest in the dispute and is the more appropriate venue for resolving it. *See id.* This factor weighs against transfer.

### 3. *Familiarity of the Forum with the Law That Will Govern the Case*

The parties do not address whether this factor weighs in favor of or against transfer. This case asserts claims for unfair competition, false advertising, and trademark infringement under federal law and a claim for trademark dilution under Texas law. To the extent that this case involves federal law, both the Northern District of Texas and the District of New Jersey are equally capable of applying it. As to the claim for trademark dilution, the Northern District of Texas maybe more familiar with it but the District of New Jersey is as capable of applying it. *See AMS Staff Leasing v. Starving Students, Inc.*, 2003 WL 21436476, at *3 (N.D. Tex. June 18, 2003). Where, as here, "the pre-dominant issues in the case involve federal law, or when the foreign law to be applied is not particularly complicated," this factor is neutral. *See Odom*, 596 F.Supp.2d at 1004.

### 4. *Avoidance of Unnecessary Problems of Conflict of Law*

The parties do not argue and there do not appear to be any conflict of law issues in this case. This factor is therefore neutral.

D.      **Balancing the Factors**

Having considered all relevant factors, the Court finds that one factor weighs against granting the motion to transfer while seven are neutral in the analysis.  On balance, the dispute between the parties would not proceed more conveniently and the interests of justice would not be better served by transferring the case to the District of New Jersey.  In sum, Defendants have not met their burden  to show by a preponderance of evidence that the transfer is appropriate, and the motion to transfer should be **DENIED**.

### III.  RULE 12(b)(2) MOTION TO DISMISS

Alternatively, Defendants move to dismiss the claims against defendant Dente for lack of personal jurisdiction.  (Mot. at 8).  Defendants assert that he lacks the requisite minimum contacts with Texas and the fiduciary-shield doctrine shields him from jurisdiction in Texas. (Mot. at 9-11).

Personal jurisdiction over a non-resident requires a determination of whether: (1) the non-resident is subject to jurisdiction under the laws of the state in which the court sits; and (2) the exercise of jurisdiction over the defendant comports with the due process requirements of the United States Constitution.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-74 (1985); *Panda Brandywine Corp. v. Potomac Electric Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001).  A defendant is amenable to the personal jurisdiction of a federal court sitting in diversity to the same extent that it would be amenable to the jurisdiction of a state court in the same forum. *Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984); Fed. R. Civ. P. 4(e)(1), 4(h)(1).  Because the Texas long-arm statute authorizes the exercise of personal jurisdiction to the extent allowed by the Due Process Clause of the Fourteenth Amendment, the Court needs to address only the federal due process inquiry.  *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *see* Tex. Civ. Prac. & Rem. Code

Ann. § 17.041 *et seq*. (Vernon 1997) (Texas long-arm statute).

"Exercising personal jurisdiction over a nonresident defendant is compatible with due process when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Panda Brandywine*, 253 F.3d at 867. The "minimum contacts" aspect of the analysis can be established through contacts that give rise to general jurisdiction or those that give rise to specific jurisdiction. *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999). General jurisdiction exists where the non-resident's contacts with the forum state are unrelated to the cause of action but are "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Alpine View Co., Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). Specific jurisdiction is appropriate where the non-resident has purposefully directed his activities at the forum state and the litigation results from the alleged injuries that arise out of or relate to those activities. *Id*. Under either a general or specific jurisdiction analysis, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate." *Burger King*, 471 U.S. at 474. To comport with due process, the defendant's conduct in connection with the forum state must be such that he "should reasonably anticipate being haled into court' in the forum state." *Latshaw*, 167 F.3d at 211.

The party seeking to assert jurisdiction must present sufficient facts to make out only a *prima facie* case supporting jurisdiction over the nonresident. *Alpine View*, 205 F.3d at 215 (citing *Felch v. Transportes Lar-Mex SA de CV*, 92 F.3d 320, 326 (5th Cir. 1996). The Court accepts that party's uncontroverted factual allegations as true and resolves all factual disputes in its favor. *Id*. The

Court, however, is not required "to credit conclusory allegations, even if uncontroverted." *Panda Brandywine*, 253 F.3d at 869.

## A.    General Jurisdiction

To make a *prima facie* showing of general jurisdiction, plaintiffs must show that defendant's contacts with the forum state unrelated to the litigation are sufficient to satisfy due process requirements. *Alpine View*, 205 F.3d at 217. The continuous and systematic contacts test for general jurisdiction "is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Johnston v. Multidata Sys. Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed. *Access Telecom, Inc. v. MCI Telecommunications Corp.*, 197 F.3d 694, 717 (5th Cir. 1999). "The contacts must be reviewed in toto, and not in isolation from one another." *Johnston*, 523 F.3d at 610.

Here, Dymatize does not even allege that defendant Dente has continuous and systematic contacts with the Northern District of Texas unrelated to the litigation. Therefore, Dymatize has not made a *prima facie* showing of general jurisdiction over defendant Dente.

## B.    Specific Jurisdiction

To make a *prima facie* showing of specific jurisdiction, plaintiffs must present sufficient facts to make a *prima facie* showing that (1) the defendant purposefully directed his activities at Texas and the litigation resulting from the alleged injuries arise out of or relate to those activities, and (2) the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *See Panda Brandywine*, 253 F.3d at 867-68.

Dymatize states in its complaint that the Court has personal jurisdiction over defendant Dente

because he "is the president of MHP, and, in that capacity, has personally directed the complained of false advertising, and activities constituting unfair competition and trademark infringement, into Texas, and this judicial district." (Compl. at 2, ¶ 7). Later in the complaint, Dymatize again states that MHP's complained of conduct "was planned, approved, supervised and/or carried out under the personal direction of Defendant Dente, as an officer, of Defendant MHP." (Compl. at 6, ¶ 26). This alleged conduct includes distributing, advertising, and promoting food and sports nutritional supplements which compete directly with those of Dymatize, and producing, distributing, and publishing advertising materials that contain false, misleading, and deceptive statements about MHP's own products as well as those of its competitors. (Compl. at 3-6).

Dymatize makes only conclusory jurisdictional allegations against Defendant Dente and does not provide any specific facts showing that defendant Dente purposefully directed or aimed his allegedly tortious activities at Texas. While the Court must accept Dymatize's jurisdictional allegations as true, such acceptance does not automatically mean that Dymatize has presented a *prima facie* case for personal jurisdiction. *See Panda Brandywine*, 253 F.3d at 868. Plaintiff must still present specific facts to show that the defendant purposefully directed his activities at Texas. *See Panda Brandywine*, 253 F.3d at 867-68. Since Dymatize has not provided any such specific facts, it has failed to make a prima facie case of personal jurisdiction over defendant Dente.[1]

Dymatize contends that the Court has personal jurisdiction over defendant Dente under the effects test, which provides that "an act done outside the state, but which causes injury inside the

---

[1] Defendants, on the other hand, provide evidence that defendant Dente is a New Jersey resident, maintains no real estate or personal property in Texas, does not maintain an office or residence in Texas, does not own any motor vehicles, airplanes, or boats that are licensed in Texas, does not maintain a bank account or loan from a local Texas bank, does not have a Texas telephone number, and is not required to pay sales or income taxes to Texas or any of its subdivisions. (See Mot. App. at 1-2).

state, may support the exercise of personal jurisdiction if the defendant purposely aimed his conduct towards the forum, thus making the exercise of personal jurisdiction reasonably foreseeable." (*See* Resp. at 12)(citing *HEI Res., Inc. v. Venture Research Inst.*, 2009 WL 2634858 (N.D. Tex. Aug 26, 2009). Even under the effects test, Dymatize has failed to provide specific facts showing that defendant Dente "expressly aimed" his conduct at Texas.

Dente also claims that because his alleged contacts with Texas are as a representative of MHP, the fiduciary-shield doctrine applies.[2] *See Ponder Research Group, LLP, v. Aquatic Navigation Inc.*, 2009 WL 2868456, at *7 (N.D. Tex. Sept. 4, 2009). The doctrine provides a general rule that "jurisdiction over an individual cannot be predicated upon jurisdiction over a corporation." *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985). In other words, "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation." *Id.* at 1197. The fiduciary-shield doctrine does not apply when a corporate officer commits intentional torts or fraudulent acts. *See id*; *Ponder Research*, 2009 WL 2868456, at *7. The doctrine similarly does not apply when a corporate officer makes fraudulent statements or knowing misrepresentations, even if he makes them in his official capacity. *Id.* An exception to the fiduciary-shield doctrine also exists when the corporation is the alter ego of the individual officer, i.e., when the corporation is simply a facade for the individual officer's interests and activities. *Stuart*, 772 F.2d at 1198.

Here, Dymatize does not provide specific facts to show that defendant Dente committed any

---

[2]The availability of the doctrine is controlled by the law of the forum state. Texas law recognizes this doctrine. *Ponder Research Group, LLP, v. Aquatic Navigation Inc.*, 2009 WL 2868456, at *7 (N.D. Tex. Sept. 4, 2009).

intentional torts or fraudulent acts, or made any knowing or fraudulent misrepresentations. Its affidavit evidence that defendant Dente is the president, CEO, and founder of MHP is not enough to show that MHP is simply a facade for Dente's own interests. Dymatize's statement in its brief that Dente *may* be the sole shareholder of MHP is speculative. For jurisdiction to exist, Dymatize must show that MHP was merely a shell corporation, or that fraud was somehow involved. *Id.* The fiduciary-shield doctrine applies in this case, and MHP's contacts cannot be imputed to defendant Dente to create personal jurisdiction over him.

## C.      <u>Jurisdictional Discovery</u>

Dymatize requests the Court to allow jurisdictional discovery regarding defendant Dente and defer its ruling on Defendants' motion to dismiss until completion of jurisdictional discovery. (Resp. at 13-14).

For the Court to grant jurisdictional discovery, a plaintiff must make a preliminary showing of jurisdiction. *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005). For a plaintiff to make this showing, he must present "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts." *HEI Res., Inc. v. Venture Research Inst.*, 2009 WL 2634858, at *7 (N.D. Tex. Aug 26, 2009) (Lynn. J.) (citing *Fielding,* 415 F.3d at 429) He must state what facts he believes discovery would uncover and how those facts would support personal jurisdiction. *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000). "Discovery on matters of personal jurisdiction...need not be permitted unless the motion to dismiss raises issues of fact. When lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982). The decision to allow jurisdictional discovery is within the discretion of the district court. *Fielding*, 415

F.3d at 419.

Dymatize has failed to make a preliminary showing of personal jurisdiction over defendant Dente.  First, general jurisdiction is clearly lacking in this case.  With respect to specific jurisdiction, Dymatize has failed to present any evidence or make any specific factual allegations to make a showing that defendant Dente purposefully targeted Texas with his allegedly tortious activity. Therefore, the Court should deny Dymatize's request for jurisdictional discovery. *See HEI Res., Inc.*, 2009 WL 2634858, at *7.

For the reasons discussed above, Defendants' alternative motion to dismiss the action against defendant Dente for lack of personal jurisdiction should be **GRANTED**.

### IV.  CONCLUSION

Defendant's motion to transfer should be **DENIED**, and the alternative motion to dismiss the action against defendant Dente for lack of personal jurisdiction should be **GRANTED**.

**SO RECOMMENDED** on this 28th day of February, 2010.


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

- 15 -

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

- 16 -